**In re Bonnie KOLLAR, Debtor.**

No. 6:05–bk–17646–ABB.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 5, 2006.

Norman L. Hull, Norman Linder Hull PA, Orlando, FL, for Debtor.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss Chapter 13 (Doc. No. 94) filed by Bonnie Kollar, the Debtor herein ("Debtor"), seeking dismissal of this case pursuant to 11 U.S.C. § 1307(b). An evidentiary hearing was held on September 19, 2006 on the Motion, the Trustee's Motion to Dismiss Case Pursuant to Section 109(e) of the Bankruptcy Code (Doc. No. 49) filed by the Chapter 13 Trustee ("Trustee"), the Joint Motion for Approval and Notice of Mediated Compromise and Settlement of Controversy Between InvestOrlando, LLP and the Debtor (Doc. No. 83) ("Settlement Motion"), and matters relating to confirmation of the Debtor's Plan. The Debtor, her counsel, the Trustee, and counsel for various creditors and parties in interest appeared at the hearing. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

The Debtor filed this individual Chapter 13 bankruptcy case on an emergency basis on December 1, 2005 ("Petition Date").[1] She owns a twenty-acre ranch located at 2300 Coral Hills Road, Apopka, Florida 32703 (the "Ranch") valued at $1,484,000.00 and a single family residence at 960 Essex Place, Orlando, Florida (the "Orlando Property") valued at $198,000.00.[2] The Debtor testified she resides at the Ranch. It is undetermined which property, if any, is the Debtor's homestead. The Ranch and the Orlando Property are encumbered by mortgages.[3] The Ranch is encumbered by a first priority mortgage held by Litton Loan Services, LP ("Litton") in the amount of $483,097.92 and a second priority mortgage held by Philip and Jill DeVita in the amount of $76,326.69.[4] The regular monthly Litton loan payment is approximately $4,000.00.

The mortgage holders instituted foreclosure actions in the Orange County state court against the Debtor pre-petition for her mortgage defaults. Litton obtained a final judgment against the Debtor and scheduled a foreclosure sale for December 15, 2006. The Debtor, to avert foreclosure, entered into an Auction Agreement ("Auction Agreement") granting Karlin Daniel & Associates, Inc. ("KDA") the exclusive right to sell the Ranch.[5] KDA conducted a public auction and InvestOrlando, LP ("InvestOrlando") was the successful bidder with a bid of $570,000.00. The parties executed a Real Estate Pur-

---

1. The Debtor's case was filed after the general effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA was enacted on April 20, 2005 and became generally effective on October 17, 2005.

2. Doc. No. 11.

3. *Id.*

4. Claim Nos. 6 and 1.

5. Claim No. 14.

chase and Sale Contract for the contract price of $627,000 00 and closing was to occur on or before December 2, 2005.[6] InvestOrlando paid $62,700.00 to KDA, which KDA is holding in escrow.

InvestOrlando was ready, willing and able to close on the sale. The Debtor was unhappy with the results of the auction believing the Ranch should have brought a higher bid price. The closing did not occur due to the Debtor's bankruptcy filing. The Debtor incurred unsecured debts in excess of $697,440.00 relating to her failure to close on the sale. KDA filed Claim No. 14 in the amount of $64,259.28 for its commission and advertising costs and InvestOrlando filed Claim No. 15 in the amount of $633,184.20 consisting of the contract price and accruing interest.

InvestOrlando instituted an adversary proceeding against the Debtor, captioned *InvestOrlando Limited v. Bonnie Kollar*, Adversary Proceeding No. 6:06–ap–00049– ABB (the "Adversary Proceeding"), seeking specific performance of the Contract or, in the alternative, damages for breach of contract. The Debtor filed a third party complaint against KDA and Alan Frankel, the auctioneer who conducted the auction, seeking damages for alleged breaches of fiduciary duty and deceptive and unfair trade practices. The Debtor and InvestOrlando presented the Settlement Motion jointly and their mediated compromise was approved in open Court. A separate Order has been entered approving the compromise. The third party complaint has

not been resolved and jurisdiction is retained for the Adversary Proceeding.

The Debtor had minimal unsecured debts prior to the schedule closing of the Ranch sale. She lists unsecured debts of $25,322.71 in Schedule F, including $7,259.28 for KDA. Timely filed unsecured claims, excluding the claims of KDA and InvestOrlando, total $28,065.05. Timely filed secured claims total $646,259.63.

The Debtor filed a Plan (Doc. No. 12) in which she proposes to pay the Trustee "projected disposable income" of $1,046.00 per month for twelve months.[7] Her secured creditors are to receive monthly installment payments of between $50.00 and $500.00 with their claim balances to be paid through the sale of "property" and the "2300 Coral Hills Road property."[8] Unsecured creditors are to receive $25.00 per month for twelve months with the balance of their claims to be paid through the sale of the Ranch.[9]

The Plan is not feasible. The Debtor stated in Schedules I and J monthly income of $2,970.60 and monthly expenses of $6,762.00.[10] Her monthly expenses exceed her monthly income by $3,791.60 on the Petition Date. She admits she had insufficient income on the Petition Date to make her mortgage payments.[11] The Debtor had no disposable income on the Petition Date with which to fund the Plan.

The Debtor's financial standing further deteriorated in May 2006 when her employer The Cameron Group terminated her employment.[12] She did not inform the

---

**6.** *Id.* The contract price of $627,000.00 consists of the winning bid price of $570,000.00 plus a buyer's premium (commission) of $57,000.00.

**7.** Doc. No. 12 at p. 1.

**8.** *Id.* at p. 2.

**9.** *Id.*

**10.** Doc. Nos. 30, 12, 31.

**11.** Transcript of September 19, 2006 hearing at p. 10.

**12.** Transcript of September 19, 2006 hearing at p. 8.

Trustee or the Court of her change in income, nor did she amend Schedule I. The Debtor's only income since termination is the sporadic, undocumented receipt of rent from a rental property and fees for independent contractor work.[13] She has never made sufficient income to make her regular monthly mortgage payments.[14] Her post-petition income is not sufficiently stable and regular to enable her to make payments under a Chapter 13 plan. Neither the rental income nor the independent contractor income constitutes regular income. The Debtor has no disposable income for funding a plan.

The Plan payments are insufficient to pay the Debtor's regular monthly mortgage payments and pre-petition arrearages. Her regular monthly Litton loan payment is approximately $4,000.00 and she proposes to pay Litton only $500.00 per month.[15] Her regular monthly Washington Mutual Bank loan payment for the Orlando Property is $756.37 and she proposes to pay this first-priority secured creditor only $50.00 per month. The mortgage arrearage figures contained in the Plan are substantially less than the actual arrearage amounts contained in the secured creditors' claims. The Plan fails to provide for full payment of the creditors' secured claims.

The Plan payments are insufficient to pay the Debtor's unsecured creditors in full and she has no intention of paying those creditors. The Debtor intends to pay only her secured creditors through a settlement of the Ranch litigation.[16] The Debtor's purpose in filing the bankruptcy case was to avoid the completion and closing of the auction, sell the Ranch, and use the proceeds to purchase a new home with no encumbrances.[17] The Debtor does not intend to pay any of her unsecured creditors.[18] The unsecured creditors would fare far better if the estate were liquidated in a Chapter 7 case.

The Plan fails to provide any details as to how and when the Debtor intends to sell the Ranch and what the term "property" means as used in the Plan. The Plan fails to delineate when the creditors' claim balances are to be paid in full after the initial twelve-month Plan period expires.

The Debtor did not file this case in good faith. She had the ability to pay her creditors through the auction sale, but, unhappy with the auction results, filed for bankruptcy. She filed this case to frustrate her secured creditors' foreclosure rights and the auction sale. Her purposes in filing this bankruptcy case were improper. The Debtor had no intention of paying her unsecured creditors. She has no ability to fund a realistic plan of reorganization. The Plan was not proposed in good faith and is not feasible. The Debtor has no disposable income. The sporadic income she receives post-petition does not constitute regular income. She is unable to pay her regular post-petition monthly mortgage payments. The Debtor has no ability to present a confirmable plan.

---

13. *Id.* at p. 9.

14. *Id.* at p. 10.

15. The Plan refers to Countrywide as holding a first priority mortgage on the Ranch. Countrywide Home Loans, Inc. was the original lender and the loan is now held by Litton.

16. Transcript of September 19, 2006 hearing at p. 12.

17. *Id.* at p. 7, ll. 20–25; p. 8, ll. 1–3;

18. *Id.* at p. 12: Debtor: "All of my mortgages will be paid in full." Trustee: "But you don't intend to pay any of your unsecured creditors; is that correct?" Debtor: "That is correct at this time."

The Debtor's case is due to be dismissed, with prejudice, as a bad faith filing. Cause exists to bar, in any subsequent case the Debtor may file, the discharge of the debts that were dischargeable in this case. Any and all debts existing on the Petition Date shall be deemed non-dischargeable.

### CONCLUSIONS OF LAW

■ A good faith condition permeates virtually every aspect of a bankruptcy case. The bankruptcy petition must be filed in good faith. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984); 2 COLLIER ON BANKRUPTCY ¶ 301.17[3], at 301–45–46 (15th ed. rev.2005). A conversion of a case from one chapter to another must be done in good faith. 11 U.S.C. § 348(f)(2) (2005). A plan of reorganization must be presented in good faith. 11 U.S.C. §§ 1129(a)(3), 1325(a)(3). A Chapter 13 plan shall not be confirmed unless "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Section 1325(a)(3) was enacted by Congress " ... to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose." *In re Waldron,* 785 F.2d 936, 940 (11th Cir.1986).

■ Cases filed in bad faith are subject to dismissal. Sections 707(a), 1112(b)(1), 1208(c), and 1307(c) of the Bankruptcy Code set forth a voluntary petition may be dismissed "for cause." A "for cause" dismissal determination involves a review of the totality of the circumstances and equitable considerations. *In re Albany Partners, Ltd.,* 749 F.2d at 674; 2 COLLIER ¶ 301.17[3][a], at 301–46. Abuse of the bankruptcy process or an inability to propose a feasible plan of reorganization constitutes grounds for dismissal:

In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate.

*In re Albany Partners, Ltd.,* 749 at 674. The Eleventh Circuit Court of Appeals explained in a subsequent case in which the debtors' case was dismissed for bad faith:

"[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives ... The cornerstone of the bankruptcy courts always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty."

*In re Waldron,* 785 F.2d at 940.

■ A Chapter 13 debtor must also meet the eligibility requirements of 11 U.S.C. § 109(e). A debtor must be an "individual with regular income" to be eligible for Chapter 13 relief. 11 U.S.C. § 109(e). An "individual with regular income" is an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a Chapter 13 plan." 11 U.S.C. § 101(30). The Debtor's rental and independent contractor income is not sufficiently stable and regular. The income does not constitute regular income pursuant to § 101(30). The Debtor is ineligible to be a Chapter 13 debtor pursuant to § 109(e).

■ The Debtor falls far short in meeting the good faith requirements of the

bankruptcy laws. The record of this case establishes the Debtor did not file this case in good faith. She filed the case to thwart her secured creditors' enforcement of their lien rights and the completion and closing of the auction sale. Her intention in filing this case was not to effectuate a plan of reorganization to pay her creditors. The Debtor admitted she does not intend to pay her unsecured creditors.

The Plan does not comply with the requirements of § 1325(a) and cannot be confirmed. It was not proposed in good faith as required by § 1325(a)(3). The Plan fails to provide for full payment of the creditors' claims. The Debtor has no ability to fund a plan and was ineligible to be a debtor on the Petition Date. The Plan violates § 1325(a)(4) because the unsecured claimants would be paid more in a Chapter 7 liquidation. The Plan violates § 1325(a)(5) because the Plan payments are insufficient to pay the Debtor's regular monthly mortgage payments as they come due and her pre-petition mortgage arrearages. The mortgage arrearage figures contained in the Plan are substantially less than the actual arrearage amounts contained in the secured creditors' claims.

The Debtor, with no regular income, cannot make the Plan payments as required by § 1325(a)(6). The Plan violates the cram-down provisions of § 1325(b) which require a debtor have disposable income.[19] The Debtor had no disposable income even before her employment was terminated. The Debtor has no means to fund the Plan or any plan. The Plan is not confirmable.

The totality of the circumstances establish the Debtor filed this case in bad faith. She is not entitled to the benefits of the bankruptcy laws. Dismissal of her case, with prejudice, is required to preserve the integrity of the bankruptcy process. Section § 349(a) allows a bankruptcy court to bar, in any subsequent case filed by a debtor, the discharge of the debts that were dischargeable in a dismissed case if cause exists. 11 U.S.C. § 349(a). Cause exists to bar the discharge of the Debtor's debts existing on the Petition Date in any subsequent case the Debtor may file. Any and all debts existing on the Petition Date are non-dischargeable pursuant to 11 U.S.C. § 349(a).

A bankruptcy court may retain jurisdiction in exercise of its discretion pursuant to § 349(a). *Fidelity Deposit Co. of Md. v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir.1992). The Court, in exercise of its discretion, shall retain jurisdiction of the Adversary Proceeding and it shall not be dismissed with the dismissal of the Debtor's bankruptcy case.

Accordingly, it is

**ORDERED, ADJUDGED and DE-CREED** that the Debtor's Motion to Dismiss Chapter 13 and the Trustee's Motion to Dismiss Case Pursuant to Section 109(e) of the Bankruptcy Code are hereby **GRANTED**; and it is further

**ORDERED, ADJUDGED and DE-CREED** that this Chapter 13 case is hereby **DISMISSED** with prejudice; and it is further

**ORDERED, ADJUDGED and DE-CREED** that any and all debts owed by the Debtor on the Petition Date are non-dischargeable pursuant to 11 U.S.C. § 349(a); and it is further

---

**19.** "Disposable income" is defined as "current monthly income received by the debtor" (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended. 11 U.S.C. § 1325(b)(2).

**ORDERED, ADJUDGED and DE-CREED** that the adversary proceeding *InvestOrlando Limited v. Bonnie Kollar*, Adversary Proceeding No. 6:06–ap–00049–ABB, is not dismissed and the Court hereby retains jurisdiction of this adversary proceeding.